## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

MICHAEL DAVID RANSOM                                    PLAINTIFF


V.                          NO. 4:13CV00444 SWW/JTR


KARL BYRD, Faulkner County Sheriff                      DEFENDANT


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at  the hearing before the Magistrate Judge.

3.     An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## I. Introduction

On August 2, 2013, Plaintiff, Michael David Ransom ("Ransom"), initiated this *pro se* § 1983 action. *Doc. 2*. At that time, he was a "free-world" citizen.

Ransom alleges that, on August 3, 2012, while he was a pretrial detainee in the Faulkner County Detention Center ("FCDC"), the former Faulkner County Sheriff, Karl Byrd ("Byrd"): (1) failed to protect him from being assaulted by two other inmates; and (2) provided him with inadequate medical care for his injuries. *Doc. 2 at 1-7*.

On January 7, 2014, United States District Judge Susan Weber Wright entered a Final Scheduling Order. *Doc. 22*. The Final Scheduling Order set a November 17, 2014 trial date, and the following deadlines: (1) motions to amend the pleadings — March 18, 2014; (2) discovery — June 20, 2014; and (3) dispositive motions — July 21, 2014. *Doc. 22*. According to the Clerk's records, on January 16, 2014, the Final Scheduling Order was returned as undeliverable to Ransom. *Doc. 24*.

On February 10, 2014, Ransom filed a letter indicating that he was incarcerated in the Tucker Unit of the ADC.[1] *Doc. 25*. On February 13, 2014, the Court entered an Order directing the Clerk to mail a copy of the docket sheet and the Final Scheduling Order to Ransom at his ADC address. *Doc. 26*.

On July 21, 2014, the final day of the dispositive motion deadline, Defendant Byrd filed a Motion requesting a four-day extension to file a Motion for

---

[1] It appears that Ransom bonded out of the FCDC on September 25, 2012. *Doc. 34-1 at ¶3*. When he filed this action on August 25, 2013, he was still free on bond. Sometime in November of 2013, Ransom entered a guilty plea and surrendered to the FCDC to begin serving his ADC sentence. *Doc. 35 at 3*. Ransom claims that when he returned to the FCDC to begin serving his sentence, he was placed in the "protective custody cell." *Id.* In January of 2014, he was transferred to the ADC. *Doc. 35 at 8*.

3

Summary Judgment. *Doc. 31*. On July 25, 2014, Byrd filed a Motion for Summary Judgment. *Doc. 32*. Ransom has filed a Response. *Doc. 35*.

Ransom has also filed belated motions requesting an extension of "all deadlines" and for leave to amend his Complaint. (*Docs. 30, 36, and 39*).

For the reasons discussed below, the Court recommends that Ransom's Motions requesting extensions of "all deadlines" and to amend his Complaint be denied. The Court also recommends that Byrd's Motion for Summary Judgment be granted, and that this case be dismissed, with prejudice.[2]

## II. Facts

1.     On August 1, 2012, Ransom was arrested on three charges of sexual assault and one count of sexual indecency with a child fourteen years of age or younger. He was detained in a holding cell at the FCDC. *Doc. 2 at ¶1*.

2.     On August 3, 2012, at approximately 2:00 p.m., Ransom had a video arraignment from the FCDC, and he entered a not-guilty plea. *Doc. 2 at ¶2*.

3.     According to Ransom, he knew of "harm coming to [FCDC] inmates with sexual charges." *Doc. 2 at ¶3*. At approximately 3:30 p.m., he "asked one of the officers at the desk" if he would be placed in a "safe cell." *Doc. 2 at ¶3*. That

---

[2]  Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a*); Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

officer told Ransom that he was being classified by another officer and that he "would be alright." *Id.*

4.     At approximately 5:30 p.m., a FCDC officer removed Ransom's shackles and told him that he had been classified into general population. *Doc. 2 at ¶4.* Ransom told the officer that he was "very scared because of what I was charged with," and that he asked to be placed in a "protected cell" by himself. *Id.* According to Ransom, the officer told him that "Unit 2 should have classified me to protective custody and there were procedures that had to be followed and I would have to fill out a grievance form before I could be moved." *Id.*

5.     Ransom was moved to a general population cell, where there were around thirty inmates. *Doc. 2 at ¶¶5-6.* At approximately 7:30 p.m., Ransom was playing chess with another inmate. The next thing that Ransom remembers is a four-second period of consciousness "standing at the tower button" saying "help me, help me." *Doc. 2 at ¶¶7-8.* After losing consciousness again, the next thing he remembers is waking up in the passenger seat of a vehicle about to enter Conway Regional Hospital. His "mouth and lips were busted and bleeding," and his "lower denture was broke in half[.]" *Id. at ¶8.*

6.     According to the Affidavit of FCDC Major John Randle, Ransom was booked into the FCDC on August 1, 2012, and released on September 25, 2012. *Doc. 34-1 at ¶ 3.*

7.     Major Randle states that the FCDC "uses a classification system to determine the proper placement of detainees. In making classification decisions, the classification officer evaluated several factors including medical conditions, criminal history, current criminal charges, escape risk, the detainee's ties to the community, and whether the detainee has any known aggressive tendencies or known enemies." *Doc. 34-1 at ¶4.*

8.     Major Randle states that, after Ransom was booked on August 1, he "underwent a classification and after a review of the applicable parameters and paperwork, the classification officer determined that [Ransom] could be housed in general population." *Doc. 34-1 at ¶5.*

9.     On August 3, 2012, Ransom "was involved in an altercation with at least two other detainees in the [FCDC]. As a result of the altercation, [Ransom] was transported to Conway Regional for treatment." *Doc. 34-1 at ¶6.*

10.    Prior to the August 3, 2012 incident, "there is no indication that [Ransom] alerted any of the [FCDC] staff that he was having a problem with any specific detainee[.]" *Doc. 34-1 at ¶7.*

11.    Byrd was not present at the FCDC when Ransom was booked into the FCDC, or "immediately before or after the altercation" on August 3, 2012. *Doc. 34 at ¶7.*

6

### III. Discussion

### A.     Plaintiff's Motions for Extension of Time and for Leave to Amend

On July 1, 2014, eleven days after the expiration of the discovery deadline, and over three months after the expiration of the deadline to amend the pleadings, Ransom filed a Motion requesting "extensions of all deadlines of the future and those I've already missed." *Doc. 30 at 2*. Ransom cites the following circumstances to support his request: (1) the FCDC's failure to respond to his May 13, 2014 Freedom of Information Act request; (2) his "free-world assistant's" disruption by the tornadoes that struck Mayflower in late April of 2014; and (3) his January 10, 2014 transfer to the ADC, resulting in the loss of his legal paperwork, and a "state of confusion with fear and shock." *Id.* Ransom states that the suggestion that he could litigate this case and conduct discovery while incarcerated is "ridiculous." *Doc. 35 at 7*.

On August 27, 2014, Ransom filed a "Motion to Amend" in which he seeks to add numerous parties as Defendants.[3] *Doc. 36*. According to Ransom, he "assumed all concerned parties would understand my claim included all of the

---

[3] Ransom seeks to add the following defendants, most of whom are not identified by name: (1) "the employee who classified me to general population;" (2) the "employees that worked the desk of Unit 2 on August 2nd and 3rd of 2012;" (3) "the two employees that worked intake at Unit 1 on 8-3-12;" (4) "the night shift employees that worked at Unit 1 and saw my conditions, especially Officer Bishop who took me to the hospital and then put me in Cell 212;" (5) "the employees that were working when the video of the vicious attack and brutal beating in question was viewed by the two officers that told me they watched it (who I will name later when I get access to my notes)"; (6) "the employee that was responsible for 'saving' the video as evidence;" (7) Sgt. Andrews; (8) Major Randle; (9) "the nurse (Winters?) and the doctor that were responsible for inmate care at Unit 1"; and (10) "the officer that classified me to protective custody on 11-13-13 (if other than Sgt. Andrews)." *Doc. 36.*

employees of the FCDC[.]" *Doc. 35 at 2*. He also states that he "assumed this Court took into account . . . that the individual names of the employees and/or any other persons would/could be entered later when the Court or I could determine the exact names of those individuals which I attempted to do by way of the [May 13, 2014] FOI Act request." *Doc. 38 at 5*. Finally, he asks the Court to compel the FCDC to respond to his May 13, 2014 FOI request. *Doc. 36 at 4*.

Ransom's requests to extend the discovery deadline and to amend his Complaint were filed *after* the expiration of the deadlines established in the Final Scheduling Order. While Ransom argues that his *pro se* status and incarceration prevented him from obtaining timely discovery, the record reflects that he made *no attempt* to conduct *any discovery* within the time frame established in the Final Scheduling Order. In the same vein, he made *no effort* to timely add any additional parties to this lawsuit.

While Ransom states that he propounded a Freedom of Information Act request to the FCDC in May, that is a state statute enforced in state court, and it is *not* a discovery device under the Federal Rules of Civil Procedure.  It is well-established that a party's *pro se* status and ignorance of the law, does not excuse him from complying with the Federal Rules of Civil Procedure. *See Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) ("Even *pro se* litigants must comply with court rules and directives."); *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001)

(*pro se* status does not excuse a party from compliance with the Federal Rules of Civil Procedure).

Under these circumstances, Ransom has not stated "good cause" for granting his untimely requests to extend the discovery deadline and to amend his Complaint. Thus, the Court recommends that Ransom's Motions be denied.

### B.    Defendant's Motion for Summary Judgment[4]

### 1.    Failure to Protect Claim

Prison officials have a duty to protect prisoners from violence from other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, prison officials do not commit a constitutional violation every time one prisoner attacks another. *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007). Pretrial detainee § 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause. *See Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) (stating "[t]his makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."). Thus, to prevail on a failure to protect claim, a prisoner must prove that: (1) objectively, there was a substantial risk of serious harm; and

---

[4] On the last day of the dispositive motion deadline, July 21, 2014, Defendant Byrd filed a Motion (*doc. 31*) requesting a four-day extension, until July 25, 2014, to file a dispositive motion. According to Byrd, he needed the additional time to obtain an "affidavit from the keeper of records who is out of town[.]" *Doc. 31 at ¶2*. On July 25, 2014, Byrd filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts. *Docs. 32-34.*

The Court concludes that Byrd has stated good cause for the short extension of the dispositive motions deadline, and recommends that it be granted, *nunc pro tunc*.

(2) subjectively, the defendants knew of and disregarded that substantial risk of serious harm. *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007).

There is nothing in the record suggesting that Byrd had any individual involvement or subjective knowledge of Ransom's classification and placement in general population. Thus, Ransom's failure to protect claim against Byrd fails as a matter of law. *See Holden v. Hirner*, 663 F.3d 336, 341-42 (8th Cir. 2011) (to avoid summary judgment on a failure to protect claim, a prisoner must present evidence demonstrating that, subjectively, the defendant knew of and disregarded a substantial risk of serious harm).

Ransom argues that the "classification system" which placed him in general population was "not sufficient," because "anyone with charges similar to the ones I had" must be segregated from general population. *Doc. 35 at 3-4*. To the extent that he is attempting to assert a liability claim under *Monell*, it also fails.[5] He cites to no authority to support his implied argument that a detainee with "charges like him" cannot be constitutionally jailed in the general population as a matter of law. Moreover, Ransom has not come forward with any evidence to rebut Major

---

[5]  In *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), the Court held that a county may only be liable if an official policy, custom, or practice was the "moving force" behind the constitutional violation. *Luckert v. Dodge County*, 684 F.3d 808, 820 (8th Cir. 2012). In this respect, a custom or practice is defined as a "continuing, widespread, persistent pattern of constitutional misconduct." *Luckert*, 684 F.3d at 820. To prevail on a such a claim, a prisoner must demonstrate: "(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Johnson v. Douglas Cnty. Med. Dep't.*, 725 F.3d 825, (8th Cir. 2013).

Randle's assertion that Ransom was placed in general population after an individualized assessment of the factors in the FCDC classification policy. *Doc. 34-1 at ¶¶4-5.*

Thus, Byrd is entitled to summary judgment on Ransom's failure to protect claim.

## 2.      Inadequate Medical Care Claim

Although Ransom claims that he received inadequate medical care for the injuries he sustained in the August 3, 2012 incident, his Complaint does not include any factual allegations specifying how Byrd, as the Sheriff and jail supervisor, provided him with inadequate medical care.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), the Court made it clear that "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are not sufficient to properly plead a claim of supervisor liability. Additionally, the Eighth Circuit has held that prison supervisors, who lack medical expertise, cannot be held liable for decisions made by medically trained prison staff.  *See, e.g., Drake ex rel Cotton v.  Koss*, 445 F.3d 1038, 1042-43 (8th Cir.  2006) (holding that jailers could not be held liable for a psychiatrist's determination that a pretrial detainee was not suicidal).

Thus, Byrd is entitled to summary judgment on Ransom's inadequate medical care claim.

### IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.      Plaintiff's Motion to Extend Time and Motions to Amend Complaint (*docs. 30, 36, and 39*) be DENIED.

2.      Defendant's Motion to Extend Time to File Dispositive Motions (*doc. 31*) be GRANTED, *nunc pro tunc*.

3.      Defendant's Motion for Summary Judgment (*doc. 32*) be GRANTED, IN PART, and this case DISMISSED, WITH PREJUDICE.

5.      The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommended Disposition would not be taken in good faith.

Dated this 15th day of October, 2014.

_____
UNITED STATES MAGISTRATE JUDGE